387 So.2d 671 (1980)
Charles Joseph DEESE, Plaintiff-Appellee,
v.
Vera Ann DEESE, Defendant-Appellant.
No. 7573.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1980.
Rehearing Denied September 19, 1980.
*672 Jack W. Caskey, of Caskey & Pizzolatto, Lake Charles, for defendant-appellant.
Arnette, Nichols & Riley, Ltd., W. Greg Arnette, Jennings, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
This is a child custody suit. The trial judge removed Charles Deese, age 8, and Skye Deese, age 7, from the custody of their mother, Vera Ann Deese, and placed the children in the custody of their father, Charles Joseph Deese, in a rule proceeding. Vera Ann Deese has appealed the trial court judgment. We reverse.
Charles Joseph Deese and Vera Ann Deese were married on May 16,1966. They made their home in Jennings, Louisiana. Two children were born of the marriage, Charles and Skye. Charles was born in April of 1970 and Skye was born in May of 1971. On May 9, 1975, the Deeses were judicially separated in uncontested proceedings. Mrs. Deese was awarded custody by consent. On December 4, 1975, the parties were divorced in an uncontested proceeding. Custody was again awarded to Mrs. Deese by consent.
In 1975, Vera Deese and the two children moved from Jennings to Lake Charles, Louisiana. She obtained employment in Lake Charles and remained there until October 1978. At that time she moved to Warrington, Florida, the home of the paternal grandparents, John and Beulah Deese. Upon arriving in Florida, she rented a house approximately five blocks from the grandparents. Vera obtained employment in Florida shortly after her arrival. At times she was working at two jobs. The employment continued until May 1979.
The relationship between the mother and the paternal grandparents was very amicable. Both of the grandparents were also employed. The employment of the mother and grandparents kept them away from home during the day. During this period, November 1978 to May 1979, both children would spend a majority of their nights with the grandparents. The record reflects that the children enjoyed staying with their grandparents. The grandparents enjoyed the visits of the children. The mother testified that she had no objection to this arrangement.
When the children stayed with the grandparents, the mother saw them practically every day. She took Charles to school or to the baby-sitter's home each day. Also, the mother would take the children to the beach for outings on weekends. The expenses of the baby-sitter was paid by both the mother and the grandparents. During the latter part of this six-month period, the girl, Skye, began staying with her mother the majority of the time.
During this time, the visitation privileges of the husband were exercised with full cooperation from the mother. The husband testified that the children spent Christmas of 1978 with him in Jennings. He also visited the children in January and February of 1979. Arrangements for visitation were made through the grandparents. In Mid-June of 1979, Deese picked up his children at his parent's home in Warrington, Florida. Mrs. Deese had given her consent to Deese's keeping the children for the summer.
While the children were with the father during the summer, Mrs. Deese called on two or three occasions to speak to the children. She wrote them two letters also. She made no visits to see them, though she began living in Lake Charles in July 1979. The relationship between the mother and her ex-husband was apparently less than amicable.
*673 On August 23, 1979, Deese filed a rule to show cause why he should not be awarded custody of the children. On August 29, 1979, Mrs. Deese contacted her husband about her picking up the children. Deese informed her that he had enrolled the children in school and had filed suit seeking to obtain custody of them.
On August 30, 1979, Mrs. Deese filed a petition seeking issuance of a writ of habeas corpus and return of the children to her control. These matters were consolidated for trial which occurred September 7, 1979.
The parties had not lived together since October 1973. The children from that time until the summer of 1979 had been in the custody of their mother.
The record further reflects that Deese is a chiropractor; that he had remarried some three or four years prior to trial; that he and his second wife had one small child; that they lived in a brick, four bedroom home on a two acre lot; and that Deese had a net income of about $6,000.00 per year.
The record also reflects that Mrs. Deese works out of a Lake Charles electrician's union, Local 861, and that she was earning approximately $15,000.00 per year. She was living in an apartment in Lake Charles at the time of trial with the intention of purchasing a home if she regained the custody of the children.
In his oral reasons for judgment, the trial judge concluded that the best interest of the children required that custody be granted to the father with reasonable visitation rights to the mother. The trial judge was of the opinion that the father could provide a more stable environment for the children.
The issue on appeal is whether the trial judge erred in changing custody of the children to the father from the mother.
The current law governing the change of custody between parents is set forth in LSA-C.C. art. 157(A), which reads, in pertinent part, as follows:
"In all cases of separation and divorce, and changes of custody after an original award, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children, without any preference being given on the basis of the sex of the parent. Such custody hearing may be held in private chambers of the judge. The party under whose care the child or children is placed, or to whose care the child or children has been entrusted, shall of right become natural tutor or tutrix of said child or children to the same extent and with the same effect as if the other party had died."
As stated in Thornton v. Thornton, 377 So.2d 417 (La.App. 2nd Cir. 1979):
". . . The father and the mother stand on equal footing at the outset and the role of the court is to determine the best interest of the child based on the relative fitness and ability of the competing parents in all respects to care for the child."
The court went on to say that:

"The legislative amendments do not, however, do away with the real life fact, based on human experience, that it is often, in many if not most family circumstances, in the best interest of young children to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many others, and will often compete with more materialistic factors that favor the father. It is correct, however, that this concept does not create a preference or presumption in favor of the mother that must be overcome by proof of the mother's unfitness or incapability."

We must point out that the previous awards of custody to the mother in this case were not considered decrees. The custody was uncontested in both the separation and divorce proceedings. Therefore, the heavy burden of proof required in Fulco[1] of the party seeking the custody change does not apply. The test is the best interest of the child. Hays v. Hays, 365 So.2d 563 (La.App. 1st Cir. 1978).
*674 Prior custody, however, is still to be considered a factor when determining who ought to have custody. Maintaining stability of environment continues to be a factor in determining the best interest of the child. Bordelon v. Bordelon, 381 So.2d 871 (La.App. 3rd Cir. 1980), writ granted, 385 So.2d 794 (La.1980). As noted above, it is often in the best interest of young children to be cared for by their mother. Thornton v. Thornton, supra.
In the present case, the children had been in the custody of their mother since 1973. The children were young and have spent the majority of their lives in the care of their mother. There is nothing in the record to indicate moral unfitness or other unsuitability of the mother. Mrs. Deese has sufficient income for the support of the children, and is quite able to provide a home. She earned $15,000.00 in 1979 and was earning $250.00 per week at the time of trial. She also had $1,900.00 in a savings account. While we may question the wisdom of allowing the children to spend so much time with their grandparents under some circumstances, we cannot say that such an arrangement could be criticized under the facts presented here. The cooperation between the mother and the grandparents inured to the benefit of the children. We cannot label such an arrangement as a neglect of the children by the mother. We conclude that the father has furnished no convincing evidence that the best interest of the children will be served by changing the custody. We find the trial judge abused his discretion in granting custody to the father in light of all of the factors to be considered.
The judgment appealed from is therefore reversed and it is ordered, adjudged and decreed that there be judgment in favor of Vera Ann Deese and against Charles Joseph Deese, dismissing the custody rule at his costs.
It is further ordered, adjudged and decreed that the writ of habeas corpus is hereby made peremptory and Charles Joseph Deese is ordered to return the children, Charles and Skye Deese, to Vera Ann Deese within fifteen (15) days from the finality of this judgment.
REVERSED AND RENDERED.
NOTES
[1] Fulco v. Fulco, 254 So.2d 603 (La. 1971).